## Application of BRACK & HEWITT.

Railroad & Public Utilities Commission.

January 5, 1951.

Lacy Mahon and Lacy Mahon, Jr., both of Jacksonville, for applicants.

George E. Owen, Tallahassee, for the Attorney General.

A. B. Dooley, Jacksonville, for Southern Bell Tel. & Tel. Co.

Lewis W. Petteway, Tallahassee, for the Commission.

Chairman WILBUR C. KING, Commissioner JERRY W. CARTER and Commissioner RICHARD A. MACK, participated in the disposition of this case.

BY THE COMMISSION.

On July 20, 1950 the Honorable Richard W. Ervin, Attorney General, notified the Jacksonville exchange manager of Southern Bell Tel. & Tel. Co. that it had been determined by investigation made by his office that telephone numbers 56384, 51692 and 69354, located at 215 and 217 West Forsyth St., Jacksonville, were used on July 10, 1950 in the bookie room at said address for illegal purposes, to-wit: the transmission of horse race information for illegal gambling purposes. The Attorney General's notice requested that the telephone service be discontinued and the facilities removed.

On the same day the Attorney General likewise served notice on the Jacksonville manager of the Western Union Telegraph Co. that a Western Union baseball ticker located at 215-217 West Forsyth St., Jacksonville, was being used for an illegal purpose, to-wit: gambling on baseball results. The Attorney General's notice requested that the baseball ticker service be discontinued and the facilities removed from the premises.

On July 26, 1950 Southern Bell Tel. & Tel. Co. notified the Attorney General and this commission that it had taken the following action pursuant to the request of the Attorney General:

> "(1) Telephone no. 5-6384, business individual line (combined hand set), non-listed, billed to Hewitt's Brack's Smoke Shop, located at 215 West Forsyth St. Notice of discontinuance given on July 21, and the telephone service was discontinued, the instrumentalities and drop removed on July 22, 1950.

> "(2) Telephone no. 5-1692, business individual line (combined hand set), listed as Hewitt and Brack's Smoke Shop, 215 West Forsyth St. Notice of discontinuance given July 21, and the service was discontinued, instrumentalities and drop removed on July 22, 1950.

> "(3) Telephone no. 6-9354, semi-public coin box service, listed as Brack's Bar and Package store, 215 West Forsyth St. Also

listed as Jimmy Manes, office. Notice of discontinuance given on July 21, and the service discontinued, instrumentalities and drop removed on July 22, 1950.

"(4) In addition to the service recited in your letter of above reference, the following service was found and discontinued at this address, being listed and used by the same subscriber:   ,

"Telephone no. 5-4012, business individual line (combined hand set), listed as R. W. Brack Liquor, 215 West Forsyth St. Notice of discontinuance given on July 21, and the service discontinued, instrumentalities and drop removed July 22, 1950."

On July 25, 1950 the Western Union Telegraph Co. notified this commission that baseball sports ticker was removed from 215-217 West Forsyth St., Jacksonville, on July 21, 1950 pursuant to request of Attorney General made on July 20, 1950.

On August 17, 1950 W. R. Brack and Stanley Hewitt, both of Jacksonville, doing business as Brack & Hewitt, 215-217 West Forsyth St., filed their petition with this commission seeking restoration of telephone service and Western Union baseball ticker service which had been discontinued at the request of the Attorney General. A public hearing was held on the petition by the commission in Jacksonville on October 25, 1950 for the purpose of taking testimony on the question whether or not petitioners are entitled to reinstatement of telephone and telegraph service discontinued as aforesaid.

The Attorney General by official opinion dated October 18, 1950 has advised the Governor of Florida that Western Union sports ticker service is furnished over facilities which constitute "private wires" under the terms of chapter 25016, Laws of Florida, Acts of 1949, which regulates the use of "private wire" facilities and prohibits their use for gambling purposes or in furtherance of gambling.

Copies of contracts calling for the installation of Western Union sports ticker service at 215-217 West Forsyth St., Jacksonville, have not been filed with this commission and for that reason we do not know if this service was installed prior to or subsequent to the effective date of chapter 25016 which was May 4, 1949. If the service was installed prior to the effective date of the law then it would not have been necessary for a copy of the contract to have been furnished this commission. On the other hand the service could not have been lawfully installed subsequent to May 4, 1949 without furnishing three

copies of the contract for such service with this commission. Investigations which are presently under way will disclose full information concerning this particular service and will be the basis for appropriate action by the commission.

Inasmuch as the baseball ticker service is covered by the "private wire" statute the commission's rule would not be applicable because the statute provides for a hearing prior to discontinuance of the service while the commission's rule provides for a hearing after the service has been discontinued. The commission's rule could not, of course, deprive one of a right of hearing given by the statute. In the instant case we do not consider the petition for restoration of the ticker service because this is a hearing under our rule and not under chapter 25016. Restoration of the ticker service cannot be considered until after the commission has determined whether it was lawfully installed in the first place. That is the subject matter of another investigation now under way as we have already indicated.

The telephone service involved in this proceeding was what is known as general exchange telephone service and is not embraced within the definition of the term "private wire" as contained in chapter 25016, supra. However, the illegal use of any telephone service or facility is prohibited by the rules and regulations of this commission and the hearing in the instant case has proceeded under the commission rule rather than under the provisions of chapter 25016.

The petitioners own and operate a pool room, billiard parlor, smoke shop and restaurant at 215-217 West Forsyth St., and for the use of the premises pay a monthly rental of $833. One of the petitioners quite frankly admitted on the witness stand that about a year ago they operated quite a different sort of business at this location, a charter membership club, the Forsyth Club, where gambling and things of that sort were carried on. In this connection it is an interesting coincidence that this commission on December 12, 1949 ordered Western Union Telegraph Co. to discontinue the private wire service of Hollywood News Service which had several drops or outlets in Jacksonville, one of which was at 217 West Forsyth St., because it was being used for the transmission of information for gambling purposes and in furtherance of gambling.

Petitioners now contend that they are engaged in a legitimate business and that if telephone service is reinstated they will not

allow it to be used for illegal purposes, in fact they have volunteered to "put up a sign on each telephone that they are not to be used in any way for gambling."

On July 10, 1950 James B. Toney, assistant attorney general, at the request of the Attorney General, made an investigation of petitioners' place of business at 215-217 West Forsyth St. About 2:30 in the afternoon Toney went into the place and sat down in front of what he described as a "bookie counter." A crowd of people were gathered around the cigar counter or "bookie counter" and men behind the counter were accepting horse bets. Toney joined the crowd around the counter and observed bets being made and race results being received over the telephone. He waited around a while and then observed the pay-off on one bet. Two telephones were behind the counter and there were two or three rows of seats facing the counter. Toney observed both of these telephones being used in the bookmaking operation. Toney observed one of petitioners himself actively engaged in the bookmaking operations behind the "bookie counter."

Further evidence of bookmaking operations by petitioners at their place of business at 215-217 West Forsyth St. could be recited. However, it would serve no useful purpose to extend this order by a recitation of cumulative proof of illegal use of telephone service and facilities.

We are convinced from the record herein that petitioners are not entitled to the immediate restoration of telephone service. Just how long one should be deprived of telephone service in cases of this kind is difficult to determine. In the few cases where we have permitted restoration of service we have deprived the offending party of service for periods ranging from three to four months. In each of those cases we were dealing with situations where the evidence did not directly connect the subscriber with the illegal use. One case involved a landlord on whose apartment house premises the illegal use occurred. Another case involved a legitimate business organization whose trade practices and policies made it possible for others to commit the illegal use. Here we have an entirely different situation. This is not a case where someone else has misused a subscriber's telephone service. Here the place of business has a "bookmaking" history and the operator of the business is himself definitely connected with the illegal use of his own telephone service and facilities. The violations involved in the present proceed-

ings were discovered a little less than one year after the commission had required the discontinuance of "private wire" service to the same place of business because of illegal use. It is the opinion of the commission that petitioners should now be deprived of all telephone service for a period of one year from the date service was discontinued at the request of the Attorney General herein.

From the evidence and record the commission finds that petitioners have failed to justify the immediate restoration of telephone service as sought. However, the commission is of the opinion, and so finds, that the telephone company should be authorized to reinstate telephone service at the expiration of one year from the date service was discontinued.

Now therefore, in consideration thereof it is ordered, adjudged and decreed that the petition for immediate restoration of telephone service be and the same is hereby denied. However, it is further ordered that Southern Bell Tel. & Tel. Co. be and it is hereby authorized and directed to reinstate telephone service to the petitioners at the expiration of one year from the date service was discontinued at the request of the Attorney General, upon proper application therefor and in conformity with its usual and customary business practices relating to the installation of telephone service.